**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 C 2880 |
| | ) | |
| VILLAGE OF LYNWOOD, | ) | Judge Steven C. Seeger |
| OFFICER LUKE TAMBRINI, | ) | |
| Star No.109, in his individual | ) | |
| capacity, OFFICER KARLSON, | ) | Jury Trial Demanded |
| Star No. 101, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff, Marcus Mosley, for his complaint against Defendants, Village of Lynwood,

Officer Luke Tambrini, Star No. 109, in his individual capacity; and Officer Karlson, Star No. 101,

in his individual capacity, alleges as follows:

**INTRODUCTION**

**Marcus Mosley is an African-American male victim of police misconduct perpetrated by
officers of the Village of Lynwood Police Department who fabricated false police reports to
justify the unlawful use of force and unlawful prosecution of an innocent man.**

1.      On May 17, 2019, Marcus Mosley, an African-American federal law enforcement

officer, had committed no crime or engaged in any unlawful conduct.

2.       The only thing Mr. Mosley did "wrong" that day was to have the misfortune of

encountering Defendant Lynwood Police Officer Luke Tambrini.

3. On May 17, 2019, Mr. Mosley was lawfully standing beside his truck which was lawfully pulled over to the side of Glenwood Dyer Road and Torrence Avenue, in south suburban Cook County, Illinois.

4. Defendant Luke Tambrini, a police officer with the Village of Lynwood Police Department, pulled up behind Mosley's lawfully parked truck.

5. As a police officer, Defendant Tambrini was duty-bound to serve and protect the public, which included Mr. Mosley. Instead, Defendant Tambrini falsely accused Mr. Mosley of committing the petty offense of urinating on a public roadway in an area where Defendant Tambrini falsely claimed parking was prohibited.

6. To perpetuate his false accusations against Mosley, Defendant Tambrini conducted a sham field investigation during which Defendant Tambrini subjected Mr. Mosley to a willful and wanton display of outrageously inhuman cruelty which began with his demand that Mr. Mosley, *literally*, lick dirt that Defendant Tambrini falsely claimed to be urine-soaked.

7. Complying with Defendant Tambrini's command, Mr. Mosley degraded himself by rubbing his finger in dirt on the ground and then licking the dirt that was on his finger.

8. The degradation to which Defendant Tambrini subjected Mr. Mosley was only mitigated by Mr. Mosley's knowledge that the dirt he licked was not urine-soaked because Mr. Mosley knew, as did Defendant Tambrini, that Mr. Mosley had not urinated on the ground.

9. Upon witnessing Mr. Mosley lick the dirt, Defendant Tambrini immediately became frustrated and angry; a response clearly triggered by Defendant Tambrini's realization that by licking the dirt, Mr. Mosley had shown that Defendant Tambrini's allegation was demonstrably false because no reasonable person would willingly lick urine-soaked dirt with their tongue or place it in his or her mouth.

10.     Fully aware that Mr. Mosley had exposed Defendant Tambrini's fabrication and how the alleged public urination offense was a pretext to harass Mr. Mosley, Defendant Tambrini attempted to salvage his charade by ordering Mr. Mosley to show him identification.

11.     Defendant Tambrini's command for Mr. Mosely to produce identification was a tactic intended to create and perpetuate a false narrative that Defendant Tambrini had done nothing wrong and was simply conducting a routine investigation.

12.     When Mr. Mosley requested that a supervisor be dispatched to the scene, Defendant Tambrini responded by needlessly escalating the situation by drawing, pointing, and shooting a Taser at Mr. Mosely, causing painful electrical currents to pulse throughout Mr. Mosley's body.

13.     Defendant Tambrini's use of his Taser on Mr. Mosely was objectively unreasonable because Mr. Mosley had committed no crime, was truthfully answering all of Defendant Tambrini's questions, and posed no threat to the safety of Defendant Tambrini.

14.     While Mr. Mosley's body laid on the ground, writhing in pain from Defendant Tambrini's unprovoked and excessively violent use of the Taser, Defendant Tambrini further escalated the situation by deploying "Dante," a police attack dog that was inside Defendant Tambrini's police vehicle.

15.     At Defendant Tambrini's command, Dante jumped out of the police vehicle and violently attacked Mr. Mosely, biting his left arm and shoulder and puncturing Mr. Mosley's skin.

16.     The end result of Mr. Mosley's May 17, 2019 encounter with Defendant Tambrini was Mr. Mosley's hospitalization at St. Francis Hospital.

17.     At the time of the incident, Mr. Mosley was employed as a law enforcement officer with the United States government.

18.     Defendant Tambrini's reckless, abusive, and malicious actions yielded profound consequences for Mr. Mosley, including the initiation of a criminal prosecution in the Circuit Court of Cook County for which, if convicted, Mr. Mosley could be incarcerated and most assuredly jeopardize his future employment opportunities as a law enforcement officer.

## JURISDICTION AND VENUE

19.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, 28 U.S.C. §1331 and §1343(a), the Constitution of the United States, and supplemental jurisdiction, as provided under 28 U.S.C. §1367(a).

20.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391 because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

## PARTIES

21.     Plaintiff Marcus Mosley is a citizen of the United States.  At all times herein mentioned, Mr. Mosley was residing in the State of Indiana when Defendant Tambrini unlawfully arrested and initiated criminal proceedings against him without probable cause or legal justification.

22.     Defendant Village of Lynwood is and was, at all times mentioned herein, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois. Defendant Village of Lynwood is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned herein, were employees of the Village of Lynwood and acting within the scope of their employment.

23.     Defendant Luke Tambrini, Star No. 109, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for Defendant Village of Lynwood.  He is being sued in his individual capacity.

24.     Defendant Officer Kaufman, Star No. 101, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for Defendant Village of Lynwood.  He is being sued in his individual capacity.

## FACTS COMMON TO ALL CLAIMS

### Marcus Mosley Was Behaving Lawfully When Defendant Tambrini Ordered Mr. Mosley to Lick Dirt

25.     On May 17, 2019, Plaintiff Marcus Mosley was a 47-year-old African-American male law enforcement officer employed by the United States government.

26.     Mr. Mosley was lawfully standing beside his truck which was lawfully pulled to the side of the road of Glenwood Dyer Road and Torrence Avenue, which is located in south suburban Cook County, Illinois.

27.     There were no signs where Mr. Mosley's truck was parked indicating that parking or stopping was prohibited or otherwise unlawful.

28.     Defendant Tambrini, operating a Village of Lynwood Police Department vehicle, pulled up behind Mosley's lawfully parked truck and falsely accused Mosley of having his truck unlawfully parked on side of the road and urinating in public.

29.     Defendant Tambrini's accusations were demonstrably false and he knew that his allegations were false when he made them.

30.     Defendant Tambrini never saw a sign prohibiting Mr. Mosley from having his truck parked at that location.

31.     Defendant Tambrini never saw Mr. Mosley urinating on the side of the public road.

32.     Defendant Tambrini fabricated those allegations, using them as a pretext to initiate an encounter with Mr. Mosley as means of harassing him because of his race, African-American.

33.     Defendant Tambrini was, and is, a Caucasian male.

34.     Mr. Mosley was, and is, an African-American male.

35.     As a police officer, Defendant Tambrini was duty-bound to uphold the law and to serve and protect the public, which included Mr. Mosley.

36.     In violation of his duties as a law enforcement officer, Defendant Tambrini falsely accused Mr. Mosley of committing the petty offense of urinating on a public roadway in an area where parking was prohibited.

37.     To perpetuate this false accusation, Defendant Tambrini conducted a sham field investigation during which Defendant Tambrini subjected Mr. Mosley to a willful and wanton display of inhuman cruelty.

38.     When Mr. Mosley denied the false accusation of urinating in public, Defendant Tambrini demanded, in a stern and aggressive tone, told Mr. Mosley to stoop down, press his finger into a section of the ground that was purportedly soaked with "foamy urine," and demanded that Mr. Mosley place that urine-soaked dirt into his mouth.

39.     Mr. Mosley, at the Defendant Tambrini's direction, complied with Defendant Tambrini's degrading command by rubbing his finger in dirt on the ground in the area of the ground specified by Defendant Tambrini and licked it.

- 6 -

40.     Although Mr. Mosley was disgusted and humiliated by Defendant Tambrini's degrading command, Mr. Mosely complied because he knew that he had not urinated on the ground and that the dirt he was about to lick was not urine-soaked.

41.     Defendant Tambrini watched Mr. Mosley comply with his order to lick the dirt.

**Without Provocation Defendant Tambrini Shoots Mr. Mosley With His Police-Issued Taser After Mr. Mosley Made the Reasonable Request to Have the Lynwood Police Department Dispatch a Supervisor to the Scene Given Defendant Tambrini's Volatile Temperament and Degrading Behavior**

42.     Upon witnessing Mr. Mosley lick the dirt, Defendant Tambrini became frustrated and angry, addressing Mr. Mosley with an increasingly forceful and hostile tone.

43.     Defendant Tambrini's reaction to Mr. Mosley's peaceful compliance with Defendant Tambrini's offensive and degrading command to lick dirt was the result of fear and anger triggered by the fact that Mr. Mosley did not react as Defendant Tambrini had hoped or expected.

44.     Defendant Tambrini expected that Mr. Mosley would refuse to lick the dirt, which Defendant Tambrini could use as proof that Mr. Mosley had urinated on the ground when, in fact, Defendant Tambrini knew that Mr. Mosley had never urinated.

45.     In other words, Defendant Tambrini wrongly believed, based on his calculated assessment of the situation, that Mr. Mosley would rather be charged and arrested for disorderly conduct in the form of public urination instead of licking dirt.

46.     But Mr. Mosley's response surprised Defendant Tambrini and upset his plan to degrade and set up Mr. Mosley for a humiliating arrest for which Defendant Tambrini lacked probable cause or legal justification.

47.     Defendant Tambrini realized that by licking the dirt, Mr. Mosley had shown that Defendant Tambrini's allegation that Mr. Mosley had been urinating in public was false because no reasonable person would willingly put urine-soaked dirt in his mouth.

48.     Defendant Tambrini was enraged insofar as Mr. Mosley had exposed Defendant Tambrini's fabrication and how the alleged public urination offense was a pretext to harass Mr. Mosley.

49.     Defendant Tambrini was angry insofar as Mr. Mosley's act of peaceful compliance with Defendant Tambrini's command had revealed the false factual predicate for Defendant Tambrini's command, exposing how he was abusing his position of public trust by degrading Mr. Mosley through tactics intended to humiliate him, motivated by Mr. Mosley's race.

50.      Defendant Tambrini attempted to salvage his charade by ordering Mr. Mosley to show him identification, creating the false appearance that Defendant Tambrini was doing nothing wrong and was continuing to conduct a routine stop.

51.     Mr. Mosley responded by peacefully requesting that Defendant Tambrini have a supervisor from the Lynwood Police Department dispatched to the scene.

52.     Defendant Tambrini, both scared and angry about Mr. Mosley's request to have a supervisor dispatched, deliberately chose to escalate the situation by drawing, pointing, and shooting his Taser at Mr. Mosely, causing painful electrical currents to pulse throughout Mr. Mosley's body.

53.     Defendant Tambrini's use of his Taser was objectively unreasonable because Mr. Mosley had committed no crime, was truthfully answering all of Defendant Tambrini's questions and posed no threat to Defendant Tambrini or anyone else.

**After Shooting Mr. Mosley With a Taser Defendant Tambrini Unleashes A Police Attack Dog to Repeatedly Bite Mr. Mosley's Body**

54.     While Mr. Mosley's body laid on the ground, writhing in pain from Defendant Tambrini's unprovoked and violent use of the Taser, Defendant Tambrini further escalated the situation by then deploying "Dante," a police attack dog.

55.     As Mr. Mosley was on the ground, with electrical current pulsing through his body, Defendant Tambrini released the police attack dog from the back of Defendant Tambrini's police vehicle.

56.     The attack dog ran up to Mr. Mosley, biting Mr. Mosley's left arm and shoulder, violently puncturing his skin and causing him to bleed.

57.     Despite being disoriented from the electrical shocks and dog bites, and laying face down on the ground, Mr. Mosley remained non-violent and passive.

58.     Defendant Tambrini then violently and forcefully pushed his knee at the intersection of Mr. Mosley's neck and upper-back area, yelling that he was placing Mr. Mosley under arrest.

59.     As Mr. Mosley was face-down with his torso, belly and legs pressed flat on the ground with Defendant Tambrini's knee pinned squarely on his upper-back and neck, he could see Defendant Karlson arrive at the scene.

60.     Mr. Mosley, suffering from excruciating pain, cried out to Defendant Karlson for aid while Defendant Tambrini continued placing his knee on Mr. Mosley's upper back and neck in an obvious attempt to interfere with Mr. Mosley's breathing and push him to the brink of unconsciousness.

61.     Defendant Karlson observed Defendant Tambrini as he violently placed his knee on Mr. Mosley's back and neck area, but instead of taking action to stop Defendant Tambrini, Defendant Karlson stood and watched as Mr. Mosley was gasping for air.

62.     Defendant Karlson knew that Defendant Tambrini had lost any semblance of control and was subjecting Mr. Mosley to uses of force that were disproportionately excessive because Mr. Mosley was on the ground helpless.

63.     Defendant Karlson knew that Defendant Tambrini's conduct was life-threatening to Mr. Mosely.

64.     Defendant Karlson was in close proximity to both Defendant Tamrbini and Mr. Mosely, giving him ample opportunity to stop Defendant Tambrini's brutal attack, but consciously chose to not intervene and protect Mr. Mosley.

65.     When nearly at the point of passing, Defendant Tambrini removed his knee from Mr. Mosley's back and neck, and placed Mr. Mosley's wrists in handcuffs behind his back.

66.     Despite Mr. Mosley not offering any resistance, Defendant Tambrini violently and without justification deployed a Taser upon Mr. Mosley, causing him to sustain violent electrical shocks.

67.     Despite Mr. Mosley not offering any resistance, Defendant Tambrini violently and without justification deployed a violent and vicious police attack dog upon Mr. Mosley, causing him to sustain puncture wounds.

68.     Despite Mr. Mosley not putting up any resistance, Defendant Tambrini violently and without justification place his knee on the upper-back and neck of Mr. Mosley to interfere with Mr. Mosley's breathing.

69.     At no time on May 17, 2019 did Mr. Mosley threaten Defendant Tambrini with physical harm.

70.     At no time on May 17, 2019, did Mr. Mosley brandish a weapon in the presence of Defendant Tambrini.

71.     At no time on May 17, 2019, did Mr. Mosley attempt to flee or evade Defendant Tambrini.

72.     At no time on May 17, 2019 was Mr. Mosley in possession of contraband, drugs or drug paraphernalia.

73.     At not time on May 17, 2019 was Mr. Mosley under the influence of any controlled substances or alcohol.

74.     At no time on May 17, 2019, was deploying a police taser upon a citizen a reasonable use of force in response to the investigation of a petty offense of public urination.

75.     At no time on May 17, 2019, was deploying a police canine upon a citizen a reasonable use of force in response to the investigation of a petty offense of public urination.

76.      At no time on May 17, 2019, was deploying a police taser upon a citizen a reasonable use of force in response to the investigation of a petty offense of parking in a no-parking zone.

77.     At no time on May 17, 2019, was deploying a police canine upon a citizen a reasonable use of force in response to the investigation of a petty offense of parking in a no-parking zone.

78.     During the course of a subsequent search of Mr. Mosley's parked truck, a handgun that Mr. Mosley lawfully owned and registered was seized by Defendant Tambrini.

79.     At all times relevant, Mr. Mosley held a duly authorized "License to Carry Handgun" issued by the State of Indiana, in addition to a concealed carry permit.

80.     After placing Mr. Mosley in handcuffs, Mr. Mosley was transported to St. Francis Hospital where he was treated for his injuries sustained as a result of Defendant Tambrini's deployment of the taser and the attack dog, in addition to Defendant Tambrini's violent attack on Mr. Mosley's person.

81.     During the course of his treatment, photographs were taken which show the puncture marks left on Mr. Mosley's body as a direct result of the dog attack.

**The Fabrication of Evidence by Defendant Tambrini to Conceal His Unjustified and Unprovoked Attack Upon Mr. Mosley**

82.     On May 17, 2019, Defendant Tambrini was equipped with a body-worn camera which recorded, at least in part, his encounter with Mr. Mosley.

83.     During the course of his initial encounter with Mr. Mosley, Defendant Tambrini purports to "narrate" his encounter with Mr. Mosley, offering self-serving characterizations of what Defendant Tambrini falsely claimed was transpiring.

84.     For example, Defendant Tambrini can be heard saying that Mr. Mosley had illegally parked his truck in a no-parking zone.

85.     When Mr. Mosley tells Defendant Tambrini that there are no signs prohibiting parking, and moves his head around to look for such signs, Defendant Tambrini does not pan his body-worn camera around the area because Defendant Tambrini knew that there were no signs and by panning his body-worn camera around the area would prove that Mr. Mosley was telling the truth and undermine Defendant Tambrini's false assertion.

86.     Defendant Tambrini, further narrating his encounter in a self-serving manner, can be overhead accusing Mr. Mosley of urinating on the ground next to his truck and referenced a puddle of foamy urine on the ground.

87.     Again, Defendant Tambrini chose not to pan the camera to the purported puddle of urine.  Defendant Tambrini's decision to not video the puddle or the surrounding area was a conscious decision to not create evidence that would undermine his false narrative.

88.     As a means to conceal his unprovoked and unjustified attack on Mr. Mosley, Defendant Tambrini created an incident report which contains numerous factual assertions which are contradicted by Defendant Tambrini's body-worn camera footage.

89.     For example, the body-worn camera footage shows how Mr. Mosley did not use or threaten to use force against Defendant Tambrini.  That fact contradicts and contrary assertion that shooting a Taser, deploying an attack dog and using a knee strike to the upper-back and neck against an African-American male who posed no threat for the alleged offense of public urination and illegal parking, was justified and/or objectively reasonable.

90.     In the report, Defendant Tambrini falsely claimed that Mr. Mosley had urinated in public and was acting in a manner justifying significant physical force, including shooting a Taser and deploying an attack dog, when there was no basis to use such drastic measures under the circumstances.

91.     Defendant Tambrini's account of the incident, as related in his written report, is directly contradicted by video footage that captured the incident.

92.     Despite having knowledge that there was basis to initiate or continue pursuit of criminal charges against Mr. Mosley, Defendant Tambrini advocated to the Office of the Cook

County State's Attorney to initiate the criminal proceedings against Mosley for, among other things, aggravated unlawful use of weapon, resisting a peace officer, obstruction of a peace officer.

93.     In or around May 2019, Defendant Tambrini initiated criminal proceedings against Mr. Mosley in the case *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801 for aggravated unlawful use of weapon, resisting a peace officer and obstruction of a peace officer.

94.     On August 11, 2021, the Office of the Cook County State's Attorney moved to dismiss (nolle prosequi) all charges against Mr. Mosley in *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, which arose from the May 17, 2019 encounter.

95.     On August 11, 2021, the Circuit Court of Cook County entered an order granting the Cook County State's Attorney's motion to dismiss all criminal charges filed against Mr. Mosley arising from and relating to the May 17, 2019 encounter with Defendant Tambrini.

## COUNT I
## 42 U.S.C. § 1983 – Excessive Force

### Against Defendant Officer Luke Tambrini, Star No. 109

96.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

97.     As described more fully above, Defendant Tambrini subjected Plaintiff Marcus Mosley to excessive force in violation of his rights secured under the Fourth Amendment to the U.S. Constitution.

98.     The willful and wanton use of excessive force described in this count was objectively unreasonable and was undertaken with malice, in addition to willful, wanton and deliberate indifference to the constitutional rights of Plaintiff Marcus Mosley.

99.     As a direct and proximate cause of the willful and wanton use of excessive force used by Defendant Luke Tambrini, Plaintiff Marcus suffered pain and injuries, including physical injuries and emotional distress.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

### COUNT II
### 42 U.S.C. § 1983 – Failure to Intervene

### Against Defendant Officer Kaufman, Star No. 101

100.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

101.    Defendants Tambrini and Kaufman were purporting to act under color of law.

102.    During the constitutional violations described above, Defendant Kaufman stood by without intervening to prevent Defendant Tambrini from subjecting the Marcus Mosley to the brutal physical attack from Defendant Tambrini.

103.    During the constitutional violations described above, Defendant Kaufman stood by without intervening to prevent Defendant Tambrini from subjecting Mr. Mosley to violent knee strike.

104.    As a result of this failure to intervene, Marcus Mosley suffered pain and injury, as well as emotional distress.

105.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to Marcus Mosley's constitutional rights under the Fourth Amendment of the United States Constitution.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Officer Kaufman, Star No. 101, for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## COUNT III
## 42 U.S.C. §1983 False Arrest

### Against Defendant Officer Luke Tambrini, Star No. 109

106.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

107.    There was no justification or cause to seize Marcus Mosley on May 17, 2019.

108.    Defendant Tambrini knew, in fact, that Mr. Mosley had not illegally parked his truck on the side of the road.

109.    Defendant Tambrini knew, in fact, that Mr. Mosley had not urinated in public while standing next to his truck which was parked on the side of the road.

110.    Without justification, Defendant Tambrini seized Mr. Mosley, violently attacked him through the use of Taser, police dog and physical force applied by Defendant Tambrini himself.

111.    Defendant Tambrini did not have probable cause to believe that Mr. Mosley had committed a crime.

112.    Defendant Tambrini did not have reasonable suspicion to believe that Mr. Mosley was involved in criminal activity and therefore had no justification to conduct a *Terry* stop or field investigation of Mr. Mosley.

113.    Defendant Tambrini seized Mr. Mosley without any legal justification and that seizure was unreasonable.

114.    There were no exigencies that warranted seizing Mr. Mosley.

115.     Defendant Tambrini seized Mr. Mosely based solely on his race (*i.e.*, African-American).

116.     Defendant Tambrini knew at the time that a person's race, alone, is not a valid or legal basis to seize someone.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

**COUNT IV**
**42 U.S.C. §1983 – Conspiracy to Deprive Constitutional Rights**

**Against Defendants Luke Tambrini, Star No. 109 and Kaufman, Star No. 101**

117.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

118.     Defendants Tambrini and Kaufman, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff Marcus Mosley of his constitutional rights.

119.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the unlawful use of force, arrest and initiation of false criminal charges against Plaintiff Marcus in violation of the Fourth Amendment) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

120.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity, including but not limited to: (a) knowingly and intentionally subjecting Marcus Mosley to objectively unreasonable force after falsely accusing him of illegally parking his car and urinating in public; (b) creating false incident reports and criminal complaints, omitting material information about how Defendant Tambrini

knowingly and intentionally fabricated the reasons for initiating contact with Marcus Mosley and created a false narrative to justify his objectively unreasonable use of force against Marcus Mosley; (c) knowingly and intentionally failing to pan the body-warn camera of Defendant Tambrini during the course of the encounter with Marcus Mosley to conceal how Defendant Tambrini was lying about the reasons for which he initiated his interaction with Marcus Mosley; (d) knowingly and intentionally falsified police reports and criminal complaints to create a false narrative that Marcus Mosley had engaged in criminal conduct for which probable cause existed to justify his arrest and subsequent criminal prosecution; and (e) knowingly and intentionally falsified police reports and criminal complaints to create a false narrative that Marcus Mosley had engaged in unlawful physical contact with Defendant Tambrini which would justify his use of force and/or falsely characterize the force used as reasonable to falsely justify Defendant Kaufman's failure to intervene and protect Marcus Mosley from Defendant Tambrini's objectively unreasonable use of force.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini and Defendant Kaufman for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## COUNT V
## State Law Claim -  False Arrest

### Against Defendant Officer Luke Tambrini, Star No. 109

121.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

122.     There was no justification or cause to seize Marcus Mosley on May 17, 2019.

123.     Defendant Tambrini knew that Mr. Mosley had not illegally parked his truck on the side of the road.

124.     Defendant Tambrini knew that Mr. Mosley had not urinated in public while standing next to his truck which was parked on the side of the road.

125.     Without justification, Defendant Tambrini seized Mr. Mosley, violently attacked him through the use of Taser, police dog and physical force applied by Defendant Tambrini.

126.     Defendant Tambrini did not have probable cause to believe that Mr. Mosley had committed a crime.

127.     Defendant Tambrini did not have reasonable suspicion to believe that Mr. Mosley was involved in criminal activity and therefore had no justification to conduct a *Terry* stop or field investigation of Mr. Mosley.

128.     Defendant Tambrini seized Mr. Mosley without any legal justification and that seizure was unreasonable.

129.     There were no exigencies that warranted seizing Mr. Mosley.

130.     Defendant Tambrini seized Mr. Mosely based solely on his race (*i.e.*, African-American).

131.     Defendant Tambrini knew that a person's race, alone, is not a valid or legal basis to seize someone.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VI
## State Law Claim - Battery

### Against Defendant Luke Tambrini, Star No. 109

132.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

133.    Defendant Tambrini intentionally made offensive bodily contact against Mr. Mosley and inflicted bodily harm.

134.    Defendant Tambrini's bodily contact with Mr. Mosley was intentional, unauthorized, and offensive.

135.    Defendant Tambrini lacked justification to engage in bodily contact with Mr. Mosley, including but not limited to how Mr. Mosley was injured when Defendant Tambrini: (a) deployed his Taser upon Mr. Mosley, subjecting him to dangerous electrical currents which coursed through his body; (b) deployed "Dante," the police attack dog, upon Mr. Mosley, causing him to be bitten on his left arm and shoulder and inflicted with painful and bloody puncture marks caused by the dog's fangs; and (c) struck Mr. Mosley's body and painfully "choked out" Mr. Mosley by forcefully placing his knee on the back of Mr. Mosley's neck without legal justification or provocation, *after* already attacking Mr. Mosley with a Taser and vicious dog.

136.    Defendant Tambrini's bodily contact with Mr. Mosley was willful, malicious, in reckless disregard for, deliberatively indifferent to and/or callously indifferent to Mosley's rights.

137.    There were no circumstances that warranted the unjustified and unreasonable force used against Mr. Mosley by Defendant Tambrini.

138.    As a direct and proximate cause of the battery, Mr. Mosley was injured, including but not limited to physical injuries, and severe pecuniary damages, including severe physical and emotional pain and suffering, humiliation, loss of liberty, loss of normal life, impairment of future employment, medical expenses, lost income, mental anguish, and emotional distress and damage.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VII
### State Law Claim – Malicious Prosecution (Criminal Prosecution of *People of the State of Illinois v. Marcus Mosley)*

### Against Defendants Luke Tambrini, Star No. 109
### and Defendant Officer Kaufman, Star No. 101

139.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

140.    Defendants Tambrini and Kaufman caused a criminal prosecution to commence and/or continue against Plaintiff Marcus Mosley, namely, the criminal prosecution captioned *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, previously pending in the Circuit Court of Cook County, Illinois.

141.    Defendants Tambrini and Kaufman maliciously commenced and/or continued the criminal prosecution *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, without probable cause for the commencement and/or continued prosecution of those proceedings.

142.    As a result, Plaintiff Marcus Mosley was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

143.    Defendants Tambrini and Kaufman initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence that would exculpate Plaintiff Marcus Mosley in *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, which was dismissed by the Circuit Court of Cook County on the motion of Office of the Cook County State's Attorney (nolle prosequi).

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini and Defendant Kaufman for compensatory damages, punitive damages, costs,

- 21 -

reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## COUNT VIII
### State Law Claim – Intentional Infliction of Emotional Distress

**Against Defendants Luke Tambrini, Star No. 109
and Defendant Officer Kaufman, Star No. 101**

144.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

145.    In the manner described more fully above, Defendants Tambrini and Kaufman engaged in extreme and outrageous conduct.

146.    The actions of Defendants Tambrini and Kaufman were rooted in an abuse of power or authority.

147.    The actions of Defendants Tambrini and Kaufman were undertaken with intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard for that probability.

148.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff Marcus Mosley.

149.    The actions of Defendants Tambrini and Kaufman were undertaken by Defendants acting within the scope of their employment such that their employer is liable for their actions.

150.    As a result of Defendants' misconduct, Plaintiff Marcus Mosley experienced and continues to experience pain, suffering and emotional distress.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini and Defendant Kaufman for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

**COUNT IX**
**State Law Claim – Civil Conspiracy**

**Against Defendants Luke Tambrini, Star No. 109 and**
**Defendant Officer Kaufman, Star No. 101**

151.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

152.    Defendants Tambrini and Kaufman, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff Marcus Mosley of his constitutional rights.

153.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the unlawful use of force, arrest and initiation of false criminal charges against Plaintiff Marcus constituting false arrest, battery and malicious prosecution) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

154.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity, including but not limited to: (a) knowingly and intentionally subjecting Marcus Mosley to objectively unreasonable force after falsely accusing him of illegally parking his car and urinating in public; (b) creating false incident reports and criminal complaints, omitting material information about how the Defendant Tambrini knowingly and intentionally fabricated the reasons for initiating contact with Marcus Mosley and created a false narrative to justify his objectively unreasonable use of force against Marcus Mosley; (c) knowingly and intentionally failing to pan the body-warn camera of Defendant Tambrini during the course of the encounter with Marcus Mosley, to conceal how Defendant Tambrini was lying about the reasons for which he initiated his interaction with Marcus Mosley; (d) knowingly and intentionally falsified police reports and criminal complaints to create a false narrative that Marcus

- 23 -

Mosley had engaged in criminal conduct for which probable cause existed to justify his arrest and subsequent criminal prosecution; and (e) knowingly and intentionally falsified police reports and criminal complaints to create a false narrative that Marcus Mosley had engaged in unlawful physical contact with Defendant Tambrini which would justify his use of force and/or falsely characterize the force used as reasonable to falsely justify Defendant Kaufman's failure to intervene and protect Marcus Mosley from Defendant Tambrini's objectively unreasonable use of force.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini and Defendant Kaufman for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT X**
**State Law Claim – Willful & Wanton Conduct**

**Against Defendants Luke Tambrini, Star No. 109**
**and Defendant Officer Kaufman, Star No. 101**

155.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

156.     In the manner described more fully above, the actions of Defendants breached the duty of care owed to Plaintiff Marcus Mosley.

157.     The actions of Defendant were willful and wanton in that they demonstrated an utter indifference for the safety and well-being other others.  In addition and/or alternatively, Defendants were conscious that an injury could result from the above-described course of action and recklessly disregarded the consequences of those actions.

158.     The misconduct was undertaken with intentional disregard for Plaintiff Marcus Mosley's rights.

- 24 -

159.     As a result of Defendants' misconduct, Plaintiff Marcus Mosley experienced and continues to experience pain, suffering and emotional distress.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Luke Tambrini and Defendant Kaufman for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT XI**
**State Law Claim – *Respondeat Superior***

**Against Defendant Village of Lynwood**

160.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

161.     In committing the acts alleged in this Complaint, Defendants Luke Tambrini and Defendant Kaufman were employees of the Village of Lynwood, and agents of the Village of Lynwood Police Department, acting at all relevant times within the scope of their employment with Defendant Village of Lynwood.

162.     Defendant Village of Lynwood is liable as principal for all torts committed by its employees and/or agents committed within the scope of their employment and/or agency with Defendant Village of Lynwood.

163.     In the event that a jury finds that either Defendant Luke Tambrini and/or Defendant Kaufman committed any unlawful acts upon which this Complaint is premised, then Defendant Village of Lynwood is liable for the acts of that employee or agent.

**WHEREFORE**, Plaintiff Marcus Mosley demands judgment against Defendant Village of Lynwood for compensatory damages, costs, and such other and additional relief that this Court deems equitable and just to the extent that Defendants Luke Tambrini and/or Defendant Kaufman is found to be so liable.

**COUNT XI**
**State Law Claim – Indemnification, 745 ILCS 10/9-102**

**Against Defendant Village of Lynwood**

164.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

165.    During the relevant times, the Village of Lynwood employed Defendants Tambrini and Kaufman as police officers.

166.    The acts alleged herein were committed by Defendants Tambrini and Kaufman as an agent for or in the scope of their employment with the Village of Lynwood.

167.    Illinois law (745 ILCS § 10/9-102) provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**WHEREFORE**, should Defendants Tambrini and/or Kaufman be found liable on one or more of the claims set forth above, Plaintiff Marcus Mosley prays that, pursuant to 745 ILCS 10/9-102, the Defendant Village of Lynwood be held liable for and pay any judgment against said Defendant, as well as attorneys' fees and costs awarded, and for any additional relief this Court deems just and proper.

### JURY DEMAND

Plaintiff Marcus Mosley hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

**PLAINTIFF MARCUS MOSLEY,**


By:  /s/Devlin J. Schoop_____
      One of his Attorneys


Date: August 12, 2021

Victor P. Henderson
Devlin J. Schoop
**THE COCHRAN FIRM – CHICAGO**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel. (312) 262-2880
vhenderson@cochranfirm.com
dschoop@cochranfirm.com