**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS MOSLEY, | ) | |
| | ) | Case No.:  20 cv 2880 |
| Plaintiff, | ) | |
| v. | ) | Honorable Judge Steven Seeger |
| | ) | |
| VILLAGE OF LYNWOOD, et al., | ) | **JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSE**
**TO PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES Defendants, VILLAGE OF LYNWOOD, OFFICER LUKE TAMBRINI, OFFICER KARLSON[1], STAR NO. 101, (hereinafter collectively referred to as Defendants), by and through their attorneys PETERSON, JOHNSON & MURRAY CHICAGO, LLC, and for their Answers and Affirmative Defenses to Plaintiff, MARCUS MOSLEY'S Amended Complaint state as follows:

INTRODUCTION[2]

1.     On May 17, 2019, Marcus Mosley, an African-American federal law enforcement officer, had committed no crime or engaged in any unlawful conduct.

**ANSWER:     Defendants deny that Plaintiff presently is a federal law enforcement officer, deny that Plaintiff was a federal law enforcement officer on May 17, 2019, and further deny that Plaintiff had not committed any crime or engaged in unlawful conduct on the date of this incident.   Defendants admit that Plaintiff is an African American.**

---

[1] The instant Complaint refers to Lynwood Police Officer Karlson as "Officer Kauffman" in error.  The defense refers to this Defendant as "Officer Karlson" throughout this Answer.
[2] The operative Complaint includes various subheadings that are not enumerated as specific paragraphs as required by Rule 10 of the Federal Rules of Civil Procedure, and are not directed at any particular Defendant.  Accordingly, no response is required, and the subheadings have been omitted from Defendants' Answer for clarity.  To whatever extent a response is required, Defendants deny the same.

2.      The only thing Mr. Mosley did "wrong" that day was to have the misfortune of encountering Defendant Lynwood Police Officer Luke Tambrini.

**ANSWER:      Defendants deny the allegation(s) contained in paragraph 2.**

3.      On May 17, 2019, Mr. Mosley was lawfully standing beside his truck which was lawfully pulled over to the side of Glenwood Dyer Road and Torrence Avenue, in south suburban Cook County, Illinois.

**ANSWER:      Defendants Tambrini and the Village of Lynwood admit that on May 17, 2019, Plaintiff, Marcus Mosley, was standing beside a truck near the intersection of Glenwood Dyer Road and Torrence Avenue in the Village of Lynwood, but deny the remaining allegation(s) contained on paragraph.**

**Defendant Karlson was not present on scene during the time period alleged in this paragraph and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

4.      Defendant Luke Tambrini, a police officer with the Village of Lynwood Police Department, pulled up behind Mosley's lawfully parked truck.

**ANSWER:      Defendants Tambrini and Village of Lynwood admit that at the time of the incident, Luke Tambrini was employed by the Village of Lynwood as a Police Officer, and that at some point during his encounter with Plaintiff, pulled up behind Plaintiff's truck but deny the remaining allegation(s) contained in paragraph 4.**

**Defendant Karlson was not present on scene during the time period alleged in this paragraph and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

5.      As a police officer, Defendant Tambrini was duty-bound to serve and protect the public, which included Mr. Mosley.  Instead, Defendant Tambrini falsely accused Mr. Mosley of committing the petty offense of urinating on a public roadway in an area where Defendant Tambrini falsely claimed parking was prohibited.

**ANSWER:      Defendants Tambrini and the Village deny that Defendant Tambrini falsely accused/claimed that Mr. Mosely committed petty offenses, admit to only those duties imposed by law, deny that this paragraph completely and accurately sets forth those duties, and therefore denies the allegation(s) herein.**

2

**Defendant Karlson offers no response to the allegation(s) in paragraph 5 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

6.      To perpetuate his false accusations against Mosley, Defendant Tambrini conducted a sham field investigation during which Defendant Tambrini subjected Mr. Mosley to a willful and wanton display of outrageously inhuman cruelty which began with his demand that Mr. Mosley, *literally*, lick dirt that Defendant Tambrini falsely claimed to be urine-soaked.

**<u>ANSWER:</u>     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 6.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 6 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

7.      Complying with Defendant Tambrini's command, Mr. Mosley degraded himself by rubbing his finger in dirt on the ground and then licking the dirt that was on his finger.

**<u>ANSWER:</u>     Defendants the Tambrini and the Village admit that Plaintiff touched the ground with his finger, but deny the remaining allegation(s) contained in paragraph 7.**

**Defendant Karlson offers no response to these allegation(s) as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

8.      The degradation to which Defendant Tambrini subject Mr. Mosley was only mitigated by Mr. Mosley's knowledge that the dirt he licked was not urine-soaked because Mr. Mosley knew, as did Defendant Tambrini, that Mr. Mosley had not urinated on the ground.

**<u>ANSWER:</u>     Defendants Tambrini and the Village deny the allegation(s) in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 8 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

9.     Upon witnessing Mr. Mosley lick the dirt, Defendant Tambrini immediately became frustrated and angry; a response clearly triggered by Defendant Tambrini's realization that by licking the dirt, Mr. Mosley had shown that Defendant Tambrini's allegation was demonstrably false because no reasonable person would willingly lick urine-soaked dirt with their tongue or place it in his or her mouth.

**<u>ANSWER:</u>    Defendants Tambrini and the Village admit that a reasonable person would not lick urine-soaked dirt, but deny the remaining allegation(s) contained in paragraph 9.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 9 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

10.     Fully aware that Mr. Mosley had exposed Defendant Tambrini's fabrication and how the alleged public urination offense was a pretext to harass Mr. Mosley, Defendant Tambrini attempted to salvage his charade by ordering Mr. Mosley to show him identification.

**<u>ANSWER:</u>    Defendants Tambrini and the Village admit that at some point during the encounter, Defendant Tambrini ordered Plaintiff to provide identification but deny the remaining allegation(s) contained in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 10 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

11.     Defendant Tambrini's command for Mr. Mosley to produce identification was a tactic intended to create and perpetuate a false narrative that Defendant Tambrini had done nothing wrong and was simply conducting a routine investigation.

**ANSWER:     Defendants Tambrini and the Village admit that Officer Tambrini directed Plaintiff to provide identification, but deny the remaining allegation(s) contained in paragraph 11.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 11 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

12.     When Mr. Mosley requested that a supervisor be dispatched to the scene, Defendant Tambrini responded by needlessly escalating the situation by drawing, pointing, and shooting a Taser at Mr. Mosely, causing painful electrical currents to pulse throughout Mr. Mosley's body,

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Plaintiff requested that a supervisor be dispatched to the scene; and further admit that at some point during the encounter, Officer Tambrini drew, pointed, and deployed his Taser at Plaintiff, but deny the remaining allegation(s) contained in paragraph 12.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 12 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

13.     Defendant Tambrini's use of his Taser on Mr. Mosley was objectively unreasonable because Mr. Mosley had committed no crime, was truthfully answering all of Defendant Tambrini's questions, and posed no threat to the safety of Defendant Tambrini.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 13.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 13 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this**

paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

14.     While Mr. Mosley's body laid on the ground, was writhing in pain from Defendant Tambrini's unprovoked and excessively violent use of the Taser, Defendant Tambrini further escalated the situation by deploying "Dante," a police attack dog that was inside Defendant Tambrini's police vehicle.

**ANSWER:     Defendants Tambrini and the Village admit the Officer Tambrini deployed his K-9 partner (dog), Dante, that was inside Tambrini's police vehicle, but deny the remaining allegation(s) contained in paragraph 14.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 14 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

15.     At Defendant Tambrini's command, Dante jumped out of the police vehicle and violently attacked Mr. Mosley, biting his left arm and shoulder puncturing Mr. Mosley's skin.

**ANSWER:     Defendants Tambrini and the Village admit that Officer Tambrini deployed his K-9 partner, Dante, and that at some point during the encounter, Dante controlled Plaintiff's left arm puncturing his skin, but deny the remaining allegation(s) contained in paragraph 15.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 15 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

16.     The end result of Mr., Mosley's May 17, 2019 encounter with Defendant Tambrini was Mr. Mosley's hospitalization at St. Francis Hospital.

**ANSWER:     Defendants admit that Plaintiff was admitted and treated St. Francis Hospital on May 17, 2019, deny any and all wrongdoing alleged, and deny the remaining allegation(s) contained in paragraph 16.**

17.    At the time of the incident, Mr. Mosley was employed as a law enforcement officer with the United States government.

**ANSWER:**    **Defendants deny the allegation(s) contained in paragraph 17.**

18.    Defendant Tambrini's reckless, abusive and malicious actions yielded profound consequences for Mr. Mosley, including the initiation of a criminal prosecution in the Circuit Court of Cook County for which, if convicted, Mr. Mosley could be incarcerated and most assuredly jeopardize his future employment opportunities as a law enforcement officer.

**ANSWER:**    **Defendants admit that Plaintiff was criminally charged in the Circuit Court of Cook County, where the sentence, if convicted, carried the possibility of incarceration, but deny the remaining allegation(s) in this paragraph.**

JURISDICTION AND VENUE

19.    The jurisdiction of this Court in invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, 28 U.S.C. §1331 and §1343(a), the Constitution of the United States, and supplemental jurisdiction, as provided under 28 U.S.C. §1367(a).

**ANSWER:**    **Defendants admit that jurisdiction is proper, based on Plaintiff's purported federal claims alleged in this lawsuit, deny that the claims are sufficiently plead, and deny any and all misconduct and wrongdoing alleged.**

20.    Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391 because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

**ANSWER:**    **Defendants admit that §(b)(2) of the federal venue statute (28 U.S.C. § 1391) is satisfied, as the purported acts giving rise to the Complaint occurred in this Judicial District, but deny the remaining allegation(s) set forth in Paragraph 20.**

PARTIES

21.    Plaintiff Marcus Mosley is a citizen of the United States.  At all times herein mentioned, Mr. Mosley was residing in the State of Indiana when Defendant Tambrini unlawfully arrested and initiated criminal proceedings against him without probable cause or legal justification.

**ANSWER:    Defendants admit that Plaintiff, Marcus Mosley, is a citizen of the United States and that he was a resident of the State of Indiana on May 17, 2019. Defendants deny the remaining allegation(s) contained in paragraph 21.**

22.    Defendant Village of Lynwood is and was, at all times mentioned herein, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois. Defendant Village of Lynwood is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned herein, were employees of the Village of Lynwood and acting within the scope of their employment.

**ANSWER:    Defendants admit that the Village of Lynwood is a municipal corporation and that Officers Tambrini and Karlson were employed by the Village of Lynwood as Police Officers.  Defendants admit that at all times, Defendants Tambrini and Karlson acted within the scope of their employment, but deny any and all wrongdoing and misconduct alleged.**

**Answering further, Defendants admit that the doctrine of *respondeat superior* can apply to both Illinois common law and statutory claims, deny that the paragraph completely and accurately sets forth scope and limits of the doctrine, and therefore denies the remaining allegation(s) of this paragraph.**

23.    Defendant Luke Tambrini, Star No. 109, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for Defendant Village of Lynwood.  He is being sued in his individual capacity.

**ANSWER:** **Defendants Tambrini and the Village admit that Officer Tambrini is a citizen of the United States, jurisdiction is proper, and that he was acting under the color of state law and within the scope his employment, but deny any and all wrongdoing and misconduct alleged.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 23 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson denies any substantive allegation(s) made against him.**

24.     Defendant Officer Kaufman, Star No. 101, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, he was acting under color of state law and within the scope of his employment for Defendant Village of Lynwood. He is being sued in his individual capacity.

**ANSWER:** **Defendants Karlson and the Village admit that Officer Karlson is a citizen of the United States, jurisdiction is proper, and that he was acting under the color of state law and within the scope of his employment, but deny any and all wrongdoing and misconduct alleged.**

**Defendant Tambrini offers no response to the allegation(s) in paragraph 24 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Tambrini denies any substantive allegation(s) made against him.**

FACTS COMMON TO ALL CLAIMS

25.     On May 17, 2019, Plaintiff Marcus Mosley was a 47-year-old African-American male law enforcement officer employed by the United States government.

**ANSWER:** **Defendants deny that Plaintiff Marcus Mosely was employed as a federal law enforcement officer on May 17, 2019, but admit but that Marcus Mosley was a 47-year-old African American male.**

26.     Mr. Mosley was lawfully standing beside his truck which was lawfully pulled to the side of the road of Glenwood Dryer Road and Torrence Avenue, which is located in South Suburban Cook County, Illinois.

**ANSWER:** **Defendants Tambrini and the Village admit that on May 17, 2019, Plaintiff, Marcus Mosley, was standing beside his truck in an area near the intersection of Glenwood Dyer Road and Torrence Avenue in South Suburban Cook County, Illinois, but deny the remaining allegation(s) contained in paragraph 26.**

**Defendant Karlson was not present on scene during the time period set forth in this paragraph, and lacks knowledge and information sufficient to form a belief as to the truth of the allegation(s) therein.**

27. There were no signs where Mr. Mosley's truck was parked indicating that parking or stopping was prohibited or otherwise unlawful.

**ANSWER:** **Defendants deny the allegations contained in paragraph 27.**

28. Defendant Tambrini, operating a Village of Lynwood Police Department Vehicle, pulled up behind Mosley's lawfully parked truck and falsely accused Mosley of having his truck unlawfully parked on side of the road and urinating in public.

**ANSWER:** **Defendants Tambrini and the Village admit that Officer Tambrini operated a Village of Lynwood Police Vehicle, and at some point, during the encounter, pulled up behind the parked truck, but deny the remaining allegation(s) contained in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 28 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

29. Defendant Tambrini's accusations were demonstrably false and he knew that his allegations were false when he made them.

**ANSWER:** **Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 29.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 29 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

30. Defendant Tambrini never saw a sign prohibiting Mr. Mosley from having his truck parked at that location.

**ANSWER:** Defendants Tambrini and the Village deny the allegations contained in paragraph 30.

**Defendant Karlson offers no response to the allegation(s) in paragraph 30 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

31. Defendant Tambrini never saw Mr. Mosely urinating on the side of the public road.

**ANSWER:** Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 31.

**Defendant Karlson offers no response to the allegation(s) in paragraph 31 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

32. Defendant Tambrini fabricated those allegations, using them as a pretext to initiate an encounter with Mr. Mosley as means of harassing him because of his race, African-American.

**ANSWER:** Defendants deny the allegation(s) contained in paragraph 32.

33. Defendant Tambrini was, and is, a Caucasian male.

**ANSWER:** Defendants admit the allegation(s) contained in paragraph 33.

34. Mr. Mosley was, and is, an African-American male.

**ANSWER:** Defendants admit the allegation(s) contained in paragraph 34.

35. As a police officer, Defendant Tambrini was duty-bound to uphold the law and to serve and protect the public, which included Mr. Mosley.

**ANSWER:** Defendants Tambrini and the Village admit to only those duties imposed by law, deny that this paragraph accurately and completely sets forth those duties, and therefore deny the remaining allegation(s) contained in paragraph 35.

**Defendant Karlson offers no response to the allegation(s) in paragraph 35 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant denies any substantive allegation(s) made against him.**

36.     In violation of his duties as a law enforcement officer, Defendant Tambrini falsely accused Mr. Mosley of committing the petty offense of urinating on a public roadway in an area where parking was prohibited.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 36 above.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 36 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

37.     To perpetuate this false accusation, Defendant Tambrini conducted a sham field investigation during which Defendant Tambrini subjected Mr. Mosley to a willful and wanton display of inhuman cruelty.

**ANSWER:     Defendants Tambrini and the Village deny the allegations contained in paragraph 37.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 37 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

38.     When Mr. Mosley denied the false accusation of urinating in public, Defendant Tambrini demanded, in a stern and aggressive tone, told Mr. Mosley to stoop down, press his finger into a section of the ground that was purportedly soaked with "foamy urine", and demanded that Mr. Mosley place that urine-soaked dirt in his mouth.

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Plaintiff denied that he had urinated on the ground, admit that Officer Tambrini requested that Plaintiff touch the ground where he believed that Plaintiff had urinated, deny that Plaintiff physically touched the liquid substance that Officer Tambrini believed to be urine, and deny the remaining allegation(s) in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 38 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

39.     Mr. Mosley, at the Defendant Tambrini's direction, complied with Defendant Tambrini's degrading command by rubbing his finger in dirt on the ground in the area of the ground specified by Defendant Tambrini, and licked it.

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Plaintiff touched the ground, deny that Plaintiff touched the liquid substance that Officer Tambrini believed to be urine, deny that Mr. Mosely ever licked his finger or placed it near his mouth area, and therefore deny the remaining allegation(s) in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 39 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

40.     Although Mr. Mosley was disgusted and humiliated by Defendant Tambrini's degrading command, Mr. Mosely complied because he knew that he had not urinated on the ground and that the dirt he was about to lick was not urine-soaked.

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Plaintiff touched the ground, deny that Plaintiff touched the liquid substance that Officer Tambrini believed to be urine, deny that Mr. Mosely ever licked his finger or placed his finger near his mouth area, and therefore deny the remaining allegation(s) in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 40 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

41.     Defendant Tambrini watched Mr. Mosley comply with his order to lick the dirt.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 41 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

42. Upon witnessing Mr. Mosley lick the dirt, Defendant Tambrini became frustrated and angry, addressing Mr. Mosley with an increasingly forceful and hostile tone.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 42.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 42 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

43. Defendant Tambrini's reaction to Mr. Mosley's peaceful compliance with Defendant Tambrini's offensive and degrading command to lick dirt was result of fear and anger triggered by the fact that Mr. Mosley did not react as Defendant Tambrini had hoped or expected.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 43.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 43 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

44. Defendant Tambrini expected that Mr. Mosley would refuse to lick the dirt, which Defendant Tambrini could use as proof that Mr. Mosley had urinated on the ground when, in fact, Defendant Tambrini knew that Mr. Mosley had never urinated.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 44.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 44 above, as they are not directed at this Defendant. To whatever extent a response is required,**

**Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

45.     In other words, Defendant Tambrini wrongly believed, based on his calculated assessment of the situation, that Mr. Mosley would rather be charged and arrested for disorderly conduct in the form of public urination instead of licking dirt.

> **ANSWER:**     **Defendants Tambrini and the Village deny that at any point during the encounter, Plaintiff ever licked dirt or otherwise placed his finger(s) near his mouth, and deny the remaining allegation(s) in this paragraph.**

> **Defendant Karlson offers no response to the allegation(s) in paragraph 45 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

46.     But Mr. Mosley's response surprised Defendant Tambrini and upset his plan to degrade and set up Mr. Mosely for humiliating arrest for which Defendant Tambrini lacked probable cause or legal justification.

> **ANSWER:**     **Defendants Tambrini and the Village deny the allegation(s) set forth in this paragraph.**

> **Defendant Karlson offers no response to the allegation(s) in paragraph 46 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

47.     Defendant Tambrini realized that by licking the dirt, Mr. Mosley had shown that Defendant Tambrini's allegations that Mr. Mosley had been urinating in public was false because no reasonable person would willingly touch urine-soaked dirt in his mouth.

> **ANSWER: Defendants Tambrini and the Village deny that at any point during the encounter, Plaintiff ever licked dirt or otherwise placed his finger(s) near his mouth, and therefore deny the allegation(s) in this paragraph.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 47 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

48.     Defendant Tambrini was enraged insofar a[*sic*] Mr. Mosley had exposed Defendant Tambrini fabrication and how the alleged public urination offense was a pretext to harass Mr. Mosley.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 48.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 48 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

49.     Defendant Tambrini was angry insofar as Mr. Mosley's act of peaceful compliance with Defendant Tambrini's command had revealed the false factual predicate for Defendant Tambrini's command, exposing how he was abusing his position of public trust by degrading Mr. Mosley through tactics intended to humiliate him, motivated by Mr. Mosley's race.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 49.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 49 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

50.     Defendant Tambrini attempted to salvage his charade by ordering Mr. Mosley to show him identification, creating the false appearance that Defendant Tambrini was doing nothing wrong and was continuing to conduct a routine stop.

**ANSWER:** Defendants Tambrini and the Village admit that Officer Tambrini ordered Plaintiff to provide identification, but deny the remaining allegation(s) contained in paragraph 50.

Defendant Karlson offers no response to the allegation(s) in paragraph 50 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

51. Mr. Mosley responded by peacefully requesting that Defendant Tambrini have a supervisor from Lynwood Police Department dispatched to the scene.

**ANSWER:** Defendants Tambrini and the Village admit that at some point in the encounter, Plaintiff requested that a Lynwood Police Department supervisor be dispatched to the scene, but deny the remaining allegation(s) contained in paragraph 51.

Defendant Karlson offers no response to the allegation(s) in paragraph 51 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

52. Defendant Tambrini, both scared and angry about Mr. Mosley's request to have a supervisor dispatched, deliberately chose to escalate the situation by drawing, pointing, and shooting his Taser at Mr. Mosley, causing painful electrical currents to pulse throughout Mr. Mosley's body.

**ANSWER:** Defendants Tambrini and the Village admit that at some point in the encounter, Officer Tambrini deployed his Taser at Plaintiff, but deny the remaining allegation(s) contained in paragraph 52.

Defendant Karlson offers no response to the allegation(s) in paragraph 52 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

53.     Defendant Tambrini's use of his Taser was objectively unreasonable because Mr. Mosley had committed no crime, was truthfully answering all the Defendant Tambrini's questions and posed no threat to Defendant Tambrini or anyone else.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 53.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 53 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

54.     While Mr. Mosley's body laid on the ground, writhing in pain from Defendant Tambrini's unprovoked and violent use of the Taser, Defendant Tambrini further escalated the situation by then deploying "Dante," a police attack dog.

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Officer Tambrini deployed his K-9 (dog) partner, Dante, but deny the remaining allegation(s) contained in paragraph 54.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 54 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

55.     As Mr. Mosley was on the ground, with electrical current pulsing through his body Defendant Tambrini released the police attack dog from the back of Defendant Tambrini's police vehicle.

**ANSWER: Defendant Tambrini and Village admit the Officer Tambrini released his K-9 partner (dog), Dante, from the rear of his police vehicle but deny the remaining allegation(s) contained in paragraph 55.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 55 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

56. The attack dog ran up to Mr. Mosley, biting Mr. Mosley's left arm and shoulder, violently puncturing his skin and causing him to bleed.

**ANSWER: Defendants Tambrini and the Village admit that while attempting to control Plaintiff, Dante punctured Plaintiff's skin but deny the remaining allegation(s) contained in paragraph 56.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 56 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

57. Despite being disoriented from the electrical shocks and dog bites, and laying face down on the ground, Mr. Mosley remained non-violent and passive.

**ANSWER: Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 57.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 57 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

58. Defendant Tambrini then violently and forcefully pushed his knee at the intersection of Mr. Mosley's neck and upper-back area, yelling that he was placing Mr. Mosley under arrest.

**ANSWER: Defendant Tambrini and the Village deny the allegation(s) contained in paragraph 58.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 58 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

59.     As for Mr., Mosley was face-down with his torso, belly and legs pressed flat on the ground with Defendant Tambrini's knee pinned squarely on his upper-back and neck, he could see Defendant Karlson arrive at the scene.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 59. Answering further, Mr. Mosely was lying face froward on the ground, by himself, while Officer Tambrini, Dante and a member of the Village of Crestwood's fire Department were standing fast several feet several feet away from Plaintiff, when Officer Karlson arrived on scene.**

60.     Mr. Mosley, suffering from excruciating pain, cried out to Defendant Karlson for aid while Defendant Tambrini continued placing his knee on Mr. Mosley's upper back and neck in an obvious attempt to interfere with Mr. Mosley's breathing and push him to the brink of unconsciousness.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 60.**

61.     Defendant Karlson observed Defendant Tambrini as he violently placed his knee on Mr. Mosley's back and neck area, but instead of taking action to stop Defendant Tambrini, Defendant Karlson stood and watched as Mr. Mosley was gasping for air.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 61.**

62.     Defendant Karlson knew that Defendant Tambrini had lost any semblance of control and was subjecting Mr. Mosley to uses of force that were disproportionately excessive because Mr. Mosley was on the ground helpless.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 62.**

63.     Defendant Karlson knew that Defendant Tambrini's conduct was life-threatening to Mr. Mosley.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 63.**

20

64.     Defendant Karlson was in close proximately to both Defendant Tambrini and Mr. Mosley, giving him ample opportunity to stop Defendant Tambrini's brutal attack, but consciously chose to not intervene and protect Mr. Mosley.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 64.**

65.     When nearly at the point of passing, Defendant Tambrini removed his knee from Mr. Mosley's back and neck, and placed Mr. Mosley's wrists in handcuffs behind his back.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 65 above.**

66.     Despite Mr. Mosley not offering any resistance, Defendant Tambrini violently and without justification deployed a Taser upon Mr. Mosley, causing him to sustain violent electrical shocks.

**ANSWER:     Defendants Tambrini and the Village admit that at some point during the encounter, Officer Tambrini deployed his Taser but deny the remaining allegation(s) contained in paragraph 66.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 66 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

67.     Despite Mr. Mosley not offering any resistance, Defendant Tambrini violently and without justification deployed a violent and vicious police attack dog upon Mr. Mosley, causing him to sustain puncture wounds.

**ANSWER:     Defendants Tambrini and the Village admit that Officer Tambrini deployed his K9 partner (dog), Dante, and that Plaintiff sustained puncture wounds, but deny the remaining allegation(s) contained in paragraph 67.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 67 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

68.     Despite Mr. Mosley not putting up any resistance, Defendant Tambrini violently and without justification place his knee on the upper-back and neck of Mr. Mosley to interfere with Mr. Mosley's breathing.

**ANSWER:     Defendants deny the allegation(s) set forth in paragraph 68 above.**

69.     At no time on May 17, 2019 did Mr. Mosley threaten Defendant Tambrini with physical harm.

**ANSWER:     Defendants Officer Tambrini and the Village deny the allegation(s) contained in paragraph 69.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 69 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

70.     At no time on May 17, 2019, did Mr. Mosley brandish a weapon in the presence of Defendant Tambrini.

**ANSWER:     Defendants Tambrini and the Village deny the allegations contained in paragraph 70.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 70 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

71.     At no time on May 17, 2019, did Mr. Mosley attempt to flee or evade Defendant Tambrini.

**ANSWER:     Defendants Officer Tambrini and the Village deny the allegation(s) contained in paragraph 71.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 71 above as they are not directed against this Defendant.  To whatever extent a response is required, Defendant was not present on scene during the time period set forth in this**

**paragraph and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

72.    At no time on May 17, 2019 was Mr. Mosley in possession of contraband, drugs or

drug paraphernalia.

**ANSWER:    Defendants admit the allegation(s) contained in paragraph 72.**

73.    At no time on May 17, 2019 was Mr. Mosley under the influence of any controlled
substances or alcohol.

**ANSWER:    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation(s) in this paragraph.**

74.    At no time on May 17, 2019, was deploying a police taser upon a citizen a

reasonable use of force in response to the investigation of a petty offense of public urination.

**ANSWER:    Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 74.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 74 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

75.    At no time on May 17, 2019, was deploying a police canine upon a citizen a

reasonable use of force in response to the investigation of a petty offense of public urination.

**ANSWER:    Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 75.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 75 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

76.    At no time on May 17, 2019, was deploying a police taser upon a citizen a

reasonable use of force in response to the investigation of a petty offense of parking in a no-parking

zone.

**ANSWER:** Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 76.

Defendant Karlson offers no response to the allegation(s) in paragraph 76 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

77.    At no time on May 17, 2019, was deploying a police canine upon a citizen a reasonable use of force in response to the investigation of a petty offense of parking in a no-parking zone.

**ANSWER:** Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 77.

Defendant Karlson offers no response to the allegation(s) in paragraph 77 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.

78.    During the course of a subsequent search of Mr. Mosley's parked truck, a handgun that Mr. Mosley lawfully owned and registered was seized by Defendant Tambrini.

**ANSWER:** Defendants admit that a handgun was seized from Plaintiff's person, deny that it was recovered from Plaintiff's truck, and deny the remaining allegation(s) of this paragraph.

79.    At all times relevant, Mr. Mosley held a duly authorized "License to Carry Handgun" issued by the State of Indiana, in addition to a concealed carry permit.

**ANSWER:** Defendants admit the allegations contained in paragraph 79, but deny that Mr. Mosely had any authority to possess and carry a handgun in the State of Illinois.

80.    After placing Mr. Mosley in handcuffs, Mr. Mosley was transported to St. Francis Hospital where he was treated for his injuries sustained as a result of Defendant Tambrini's

deployment of the taser and the attack dog, in addition to Defendant Tambrini's violent attack on

Mr. Mosley's person.

>**ANSWER:** **Defendants admit that Plaintiff was transported and treated at St. Francis Hospital for injuries but deny the remaining allegation(s) contained in paragraph 80.**

81.     During the course of his treatment, photographs were taken which show the

puncture marks left on Mr. Mosley's body as a direct result of the dog attack.

>**ANSWER:** **Defendants the Village and Officer Tambrini admit that medical staff there are photographs of injuries to Plaintiff's left arm area, presumably of the puncture wounds from Dante, and said photographs are the best evidence of their content and speak for themselves. Defendants deny the remaining allegation(s) contained in paragraph 81.**

>**Defendant Karlson lacks knowledge and information sufficient to form a belief as to the truth of the allegation(s) in this paragraph.**

82.     On May 17, 2019, Defendant Tambrini was equipped with a body-worn camera

which recorded, at least in part, his encounter with Mr. Mosley.

>**ANSWER:** **Defendants admit the allegations contained in paragraph 82.**

83.     During the course of his initial encounter with Mr. Mosley, Defendant Tambrini

purports to "narrate" his encounter with Mr. Mosley, offering self-serving characterization of what

Defendant Tambrini falsely claimed was transpiring.

>**ANSWER:** **Defendants deny the allegation(s) contained in paragraph 83.**

84.     For example, Defendant Tambrini can be heard saying that Mr. Mosley had

illegally parked truck in a no-parking zone.

>**ANSWER:** **To whatever extent this paragraph refers to the videos from the incident, said videos are the best evidence of their content, and Defendants deny Plaintiff's conclusions, summaries, and opinions regarding the same, and therefore deny the allegation(s) in paragraph 84.**

85.     When Mr. Mosley tells Defendant Tambrini that there are no signs prohibiting parking, and moves his head around to look for such signs, Defendant Tambrini does no pan his body-worn camera around the area because Defendant Tambrini knew that there were no signs and by panning his body-worn camera around the area would prove that Mr. Mosley was telling the truth and undermine Defendant Tambrini's false assertion.

**ANSWER:    To whatever extent this paragraph refers to the videos from the incident, said videos are the best evidence of their content, and Defendants deny Plaintiff's conclusions, summaries, and opinions regarding the same, and therefore deny the allegation(s) in paragraph 85.**

86.     Defendant Tambrini, further narrating his encounter in a self-serving manner, can be overhead accusing Mr. Mosley of urinating on the ground next to his truck and referenced a puddle of foamy urine on the ground.

**ANSWER:    To whatever extent this paragraph refers to the videos from the incident, said videos are the best evidence of their content, and Defendants deny Plaintiff's conclusions, summaries, and opinions regarding the same, and therefore deny the allegation(s) in paragraph 86.**

87.     Again, Defendant Tambrini chose not to pan the camera to the purported puddle of urine.  Defendant Tambrini's decision to not video the puddle or the surrounding area was a conscious decision to not create evidence that would undermine his false narrative.

**ANSWER:    Defendants Tambrini and the Village deny the allegations contained in paragraph 87.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 87 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

88.     As a means to conceal his unprovoked and unjustified attack on Mr. Mosley, Defendant Tambrini created an incident report which contained numerous factual assertions which are contradicted by Defendant Tambrini's body-worn camera footage.

**ANSWER:     Defendants Tambrini and the Village deny the allegation(s) contained in paragraph 88.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 87 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson denies any substantive allegation(s) made against him.**

89.     For example, the body-worn camera footage shows how Mr. Mosley did not use or threaten to use force against Defendant Tambrini.  That fact contradicts and contrary assertion that shooting a Taser, deploying an attack dog and using a knee strike to the upper-back and neck against an African-American male who posed no threat for the alleged offense of public urination and illegal parking, was justified and/or objectively reasonable.

**ANSWER:     Defendants deny the allegation(s) contained in paragraph 89.**

90.     In the report, Defendant Tambrini falsely claimed that Mr. Mosley had urinated in public and was acting in a manner justifying significant physical force, including shooting a Taser and deploying an attack dog, when there was no basis to use drastic measures under the circumstances.

**ANSWER:     Officer Tambrini's report is the best evidence of its content, and Defendants Tambrini and the Village deny Plaintiff's conclusions, summaries, and opinions related thereto, and therefore deny the allegation(s) in paragraph 90.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 90 above, as they are not directed at this Defendant.  To whatever extent a response is required, Defendant Karlson was not present on scene during the time period set forth in this paragraph, and therefore lacks knowledge sufficient to form a belief as to the truth of the allegation(s) herein.**

91.     Defendant Tambrini's account of the incident, as related in his written report, is directly contradicted by video footage that captured the incident.

27

**ANSWER:** **Officer Tambrini's report and the videos are the best evidence of their content and Defendants Tambrini and the Village deny Plaintiff's conclusions, summaries, and opinions related thereto, and therefore deny the allegation(s) contained in paragraph 91.**

**Defendant Karlson offers no response to the allegation(s) in paragraph 91 above, as they are not directed at this Defendant. To whatever extent a response is required, Defendant Karlson denies any substantive allegation(s) made against him.**

92.     Despite having knowledge that there was basis to initiate or continue pursuit of criminal charges against Mr. Mosley, Defendant Tambrini advocated to the Office of the Cook County State's Attorney to initiate the criminal proceedings against Mosley for, among other things, aggravated unlawful use of weapon, resisting a peace officer, obstruction of a peace officer.

**ANSWER:** **Defendants object as the paragraph is confusing. Defendants therefore deny the allegation(s) in this paragraph.**

93.     In or around May 2019, Defendant Tambrini initiated criminal proceedings against Mr. Mosley in the case *People of the State of Illinois v. Marcus Mosley, Case No. 19 CR 773801* for aggravated unlawful use of weapon, resisting a peace officer and obstruction of a peace officer.

**ANSWER:** **Defendants admit that in or around May 2019, Plaintiff was criminally charged in the case *People of the State of Illinois v. Marcus Mosley, Case No. 19 CR 773801,* with aggravated unlawful use of weapon, and that Mr. Mosely was also charged with resisting a peace officer, but deny the reaming allegation(s) contained in paragraph 93.**

94.     On August 11, 2021, the Office of the Cook County State's Attorney moved to dismiss (nolle prosequi) all charges against Mr. Mosley in *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, which arose from the May 17, 2019 encounter.

**ANSWER:** **Defendants admit, on information and belief, that the Office of the Cook County State's Attorney moved to dismiss the criminal charges of aggravated unlawful use of weapon, resisting a peace officer and obstruction service of process, but deny that the State's Attorney's Office moved to dismiss all charges which arose from the May 17, 2019 incident.**

95.     On August 11, 2021, the Circuit Court of Cook County entered an order granting the Cook County State's Attorney's motion to dismiss all criminal charges filed against Mr. Mosley arising from and relating to the May 17, 2019 encounter with Defendant Tambrini.

**ANSWER:     Defendants admit, on information and belief, that the Circuit Court of Cook County entered an order dismissing the criminal charge of aggravated unlawful use of weapon, but deny the remaining allegation(s) contained in this paragraph.**

COUNT I
42 U.S.C.§ 1983 – Excessive Force
Against Defendant Officer Luke Tambrini, Star No. 109

**Defendants Karlson and the Village offer no response to the allegation(s) contained in Count I, as this Count is not directed against them.  To whatever extent a response is required, Defendants Karlson and the Village deny any and all substantive allegation(s) made against them.**

96.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:     Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 96, as if fully restated herein.**

97.     As described more fully above, Defendant Tambrini subjected Plaintiff Marcus Mosley to excessive force in violation of his rights secured under the Fourth Amendment to the U.S. Constitution.

**ANSWER:     Defendant Tambrini denies the allegation(s) contained in paragraph 97.**

98.     The willful and wanton use of excessive force described in this count was objectively unreasonable and was undertaken with malice, in addition to willful, wanton, and deliberate indifference to the constitutional rights of Plaintiff Marcus Mosley.

**ANSWER:     Defendant Tambrini denies the allegation(s) contained in paragraph 98.**

99.     As a direct and proximate cause of the willful and wanton use of excessive force used by Defendant Luke Tambrini, Plaintiff Marcus suffered pain and injuries, including physical injuries and emotional distress

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 99.**

**WHEREFORE,** Defendant Tambrini prays that this Honorable Court enter judgment in his favor dismissing Plaintiff's operative Complaint and award him fees and costs, and whatever additional relief the Court deems just.

COUNT II
42 U.S.C § 1983 – Failure to Intervene
Against Defendant Officer Kaufman, Star No. 101

**Defendants Tambrini and the Village offer no response to the allegation(s) contained in Count II, as this Count is not directed against them. To whatever extent a response is required, Defendants Tambrini and the Village deny any and all substantive allegation(s) made against them.**

100.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:** **Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 100, as if fully restated herein.**

101.    Defendants Tambrini and Kaufman were purporting to act under color law.

**ANSWER:** **Defendant Karlson admits that he and Officer Tambrini were acting under color of law, denies any and all wrongdoing and misconduct alleged, and denies the remaining allegation(s) contained in paragraph 101.**

102.    During the constitutional violations described above, Defendant Kaufman stood by without intervening to prevent Defendant Tambrini from subjecting the Marcus Mosley to the brutal physical attack from Defendant Tambrini.

**ANSWER:** **Defendant Karlson denies the allegation(s) contained in paragraph 102.**

103.    During the constitutional violations described above, Defendant Kaufman stood by without intervening to prevent Defendant Tambrini from subjecting Mr. Mosley to violent knee strike.

**ANSWER:** **Defendant Karlson denies the allegation(s) contained in paragraph 103.**

104.     As a result of this failure to intervene, Marcus Mosley suffered pain and injury, as well as emotional distress.

**ANSWER:     Defendants Karlson denies the allegation(s) contained in paragraph 104.**

105.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to Marcus Mosley's constitutional rights under the Fourth Amendment of the United States Constitution.

**ANSWER:     Defendant Karlson denies the allegation(s) contained in paragraph 105.**

COUNTY III
42 U.S.C. § 1983 False Arrest
Against Defendant Officer Luke Tambrini, Star No. 109

**Defendants Karlson and the Village offer no response to the allegation(s) contained in Count III, as this Count is not directed against them. To whatever extent a response is required, Defendants Karlson and the Village deny any and all substantive allegation(s) made against them.**

106.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:     Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 106, as if fully restated herein.**

107.     There was no justification or cause to seize Marcus Mosley on May 17, 2019.

**ANSWER:     Defendant Tambrini denies the allegation(s) contained in paragraph 107.**

108.     Defendant Tambrini knew, in fact, that Mr. Mosley had not illegally parked his truck on the side of the road.

**ANSWER:     Defendant Tambrini denies the allegation(s) contained in paragraph 108.**

109.     Defendant Tambrini knew, in fact, that Mr. Mosley had not urinated in public while standing next to his truck which was parked on the side of the road.

**ANSWER:     Defendant Tambrini denies the allegation(s) contained in paragraph 109.**

110.    Without justification, Defendant Tambrini seized Mr. Mosley, violently attacked him through the use of taser, police dog and physical force applied by Defendant Tambrini himself.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 110.**

111.    Defendant Tambrini did not have probable cause to believe that Mr. Mosley had committed a crime.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 111.**

112.    Defendant Tambrini did not have reasonable suspicion to believe that Mr. Mosley was involved in criminal activity and therefore had not justification to conduct a *Terry* stop or field investigation of Mr. Mosley.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 112.**

113.    Defendant Tambrini seized Mr. Mosley without legal justification and that seizure was unreasonable.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 113.**

114.    There were no exigencies that warranted seizing Mr. Mosley.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 114.**

115.    Defendant Tambrini seized Mr. Mosley bases solely on his race (*i.e.,* African-American).

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 115.**

116.    Defendant Tambrini knew at the time that a person's race, alone, is not a valid or legal basis to seize someone.

32

**ANSWER:** **Defendant Tambrini admits that a person's race, alone, is not a valid legal basis to seize someone, denies that Mr. Mosley's race had any impact whatsoever on Mr. Mosley's arrest, and denies any wrongdoing and misconduct alleged in this paragraph.**

COUNT IV
42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights
Against Defendants Luke Tambrini, Star No. 109 and Kaufman, Star No. 101

**The Village offer no response to the allegation(s) contained in Count IV, as this Count is not directed against it. To whatever extent a response is required, the Village denies any and all substantive allegation(s) made against it.**

117.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:** **Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 117, as if fully restated herein.**

118.    Defendant Tambrini and Kaufman, acting in convert[*sic*] with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff Marcus Mosley of his constitutional rights.

**ANSWER:** **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 118.**

119.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the unlawful use of force, arrest and initiation of false criminal charges against Plaintiff Marcus in violation of the Fourth Amendment) by unlawful means (Including falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

**ANSWER:** **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 119.**

120.    In furtherance of their conspiracy each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity, including but not limited to: (a) knowingly and intentionally subjecting Marcus Mosley to objectively unreasonable force after falsely accusing him of illegally parking his car and urinating in public; (b) creating false incident reports and criminal complaints, omitting material information about how Defendant Tambrini,

33

knowingly and intentionally fabricated the reasons for initiating contact with Marcus Mosley and created a false narrative to justify his objectively unreasonable us of force against Marcus Mosley and created a false narrative to justify his objectively unreasonable use of force against Marcus Mosley; (c) knowingly and intentionally failing to pan the body-warn camera of Defendant Tambrini during the course of the encounter with Marcus Mosley to conceal how Defendant Tambrini was lying about the reasons for which he initiated his interactions with Marcus Mosley; (d) knowingly and intentionally falsified police reports and criminal complaint to create a false narrative that Marcus Mosley had engaged in criminal conduct for which probable cause existed to justify his arrest and subsequent criminal prosecutions; and (e) knowingly and intentionally falsified police reports and criminal complaint to create a false narrative that Marcus Mosley engaged in unlawful physical contact with Defendant Tambrini which would justify his use of force and/or falsely characterize the force used as reasonable to falsely justify Defendant Karlson's failure to intervene and protect Marcus Mosley from Defendant Tambrini's objectively unreasonable use of force.

**ANSWER:** **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 119.**

COUNT V

<u>State Law Claim – False Arrest</u>

Against Defendant Officer Luke Tambrini, Star No. 109

**Defendants Karlson and the Village offer no response to the allegation(s) contained in Count V, as this Count is not directed against them. To whatever extent a response is required, Defendants Karlson and the Village deny any and all substantive allegation(s) made against them.**

121. Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:** **Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 121, as if fully restated herein.**

122. There was no justification or cause to seize Marcus Mosley on May 17, 2019

34

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 122.**

123.    Defendant Tambrini knew that Mr. Mosley had not illegally parked his truck on the side of the road.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 123.**

124.    Defendant Tambrini knew that Mr. Mosley had not urinated in public while standing next to his truck which was parked on the side of the road.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 124.**

125.    Without justification, Defendant Tambrini seized Mr. Mosley, violently attacked him through the use of Taser, police dog and physical force applied by Defendant Tambrini.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 125.**

126.    Defendant Tambrini did not have probable cause to believe that Mr. Mosley had committed a crime.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 126.**

127.    Defendant Tambrini did not have reasonable suspicion to believe that Mr. Mosley was involved in a criminal activity and thereafter had not justification to conduct a *Terry* stop or field investigation of Mr. Mosley.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 127.**

128.    Defendant Tambrini seized Mr. Mosley without any legal justification and that seizure was unreasonable.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 128.**

129.    There were no exigencies that warranted seizing Mr. Mosley.

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 129.**

130.    Defendant Tambrini seized Mr. Mosley based solely on his race (*i.e.,* African American).

**ANSWER:    Defendant Tambrini denies the allegation(s) contained in paragraph 130.**

131.    Defendant Tambrini knew that a person's race, alone, is not a valid or legal basis to seize someone.

**ANSWER:    Defendant Tambrini admits that a person's race, alone, is not a valid legal basis to seize someone, denies that Mr. Mosley's race had any impact whatsoever on Mr. Mosley's arrest, and denies any wrongdoing and misconduct alleged in this paragraph.**

COUNT VI
State Law Claim – Battery
Against Defendant Luke Tambrini, Star No. 109

**Defendants Karlson and the Village offer no response to the allegation(s) contained in Count VI, as this Count is not directed against them. To whatever extent a response is required, Defendants Karlson and the Village deny any and all substantive allegation(s) made against them.**

132.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:    Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 133, as if fully restated herein.**

133.    Defendant Tambrini intentionally made offensive bodily contact against Mr. Mosley and inflicted bodily harm.

**ANSWER:    Defendant Tambrini admits that he made bodily contact with Plaintiff, but denies that said contact lacked legal authorization or justification, and therefore deny the remaining allegation(s) contained in this paragraph.**

134.    Defendant Tambrini's bodily contact with Mr. Mosley was intentional, unauthorized and offensive.

**ANSWER:** **Defendant Tambrini admits that he made bodily contact with Plaintiff, but denies that said contact lacked legal authorization or justification, and therefore deny the remaining allegation(s) contained in this paragraph.**

135.     Defendant Tambrini lacked justification to engage in bodily contact with Mr. Mosley, including but not limited to how Mr. Mosley was injured when Defendant Tambrini; (a) deployed his Taser upon Mr. Mosley, subjecting him to dangerous electrical currents which coursed through his body; (b) deployed "Dante," the police attack dog, upon Mr. Mosley causing him to be bitten on the left arm and shoulder and inflicted with painful and bloody puncture marks caused by the dog's fangs; (c) struck Mr. Mosley's body and painfully "chocked out" Mr. Mosley by forcefully placing his knee on the back of Mr. Mosley's neck without legal justification or provocation, *after* already attacking Mr. Mosley with Taser and vicious dog.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 135.**

136.     Defendant Tambrini's bodily contact with Mr. Mosley was willful, malicious, in reckless disregard for, deliberatively indifferent to and/or callously indifferent to Mosley's rights.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 136.**

137.     There were no circumstances that warranted the unjustified and unreasonable force used against Mr. Mosley by Defendant Tambrini.

**ANSWER:** **Defendant Tambrini denies that he lacked justification to use force, denies that the force used was unreasonable, and therefore denies the remaining allegation(s) contained in paragraph 137.**

138.     As a direct and proximate cause of the battery, Mr. Mosley was injured, including but not limited to physical injuries, and severe pecuniary damages, including severe physical and emotional pain and suffering, humiliation, loss of liberty, loss of normal life, impairment of future employment, medical expenses, lost income, mental anguish, and emotional distress and damage.

**ANSWER:** **Defendant Tambrini denies the allegation(s) contained in paragraph 138.**

COUNT VII

State Law Claim – Malicious Prosecution (Criminal Prosecution of *People of the State of Illinois v. Marcus Mosley)*

139.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER: Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 139, as if fully restated herein.**

140.    Defendants Tambrini and Kaufman caused a criminal prosecution to commence and/or continue against Plaintiff Marcus Mosley, namely, the criminal prosecution captioned *People of the State of Illinois v. Marcus Mosley, Case No. 19 CR 773801,* previously pending in the Circuit Court of Cook County, Illinois.

**ANSWER:    Defendants deny the allegation(s) contained in paragraph 140.**

141.    Defendants Tambrini and Kaufman maliciously commenced and/or continued the criminal prosecution *People of the State of Illinois v. Marcus Mosley*, Case No. 19 CR 773801, without probable cause for the commencement and/or continued prosecution of those proceedings.

**ANSWER:    Defendants deny the allegation(s) contained in paragraph 141.**

142.    As a result, Plaintiff Marcus Mosley was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental destress and emotional damages

**ANSWER:    Defendants deny the allegation(s) contained in paragraph 142.**

143.    Defendant Tambrini and Kaufman initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence that would exculpate Plaintiff

Marcus Mosley in *People of the State of Illinois v. Marcus Mosley,* Case No. 19 CR 773801, currently pending in the Circuit Court of Cook County, Illinois.

> **ANSWER:**   Defendants deny the allegation(s) contained in paragraph 143.

COUNT VIII
State Law Claim – Intentional Infliction of Emotional Distress

Against Defendants Luke Tambrini, Star No. 109
and Defendant Officer Kaufman Star No. 101

**The Village offer no response to the allegation(s) contained in Count VIII, as this Count is not directed against it.  To whatever extent a response is required, the Village denies any and all substantive allegation(s) made against it.**

144.   Each of the foregoing paragraph are incorporated as if restated fully herein.

> **ANSWER:**   **Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 144, as if fully restated herein.**

145.   In the manner described more fully above, Defendants Tambrini and Kaufman engaged in extreme and outrageous conduct.

> **ANSWER:**   **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 145.**

146.   The actions of Defendants Tambrini and Kaufman were rooted in an abuse of power or authority.

> **ANSWER:**   **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 146.**

147.   The actions of Defendants Tambrini and Kaufman were undertaken with intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard for that probability.

> **ANSWER:**   **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 147.**

148.   Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff Marcus Mosley.

**ANSWER:** **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 148.**

149.    The actions of Defendants Tambrini and Kaufman were undertaken by Defendants

acting within the scope of their employer such that their employer is liable for their actions.

**ANSWER:** **Defendants Tambrini and Karlson admit that they were employed by the Village of Lynwood as police officers on May 17, 2019, and were working within the scope of their employment, but have denied, and continue to deny all of the substantive allegations in this Count, and have further denied and continue to deny any and all misconduct and wrongdoing alleged against them in this lawsuit, and therefore deny the remaining allegation(s) in this paragraph.**

150.    As a result of Defendants misconduct, Plaintiff Marcus Mosley experienced and

continues to experience pain, suffering and emotional distress.

**ANSWER: Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 150.**

COUNT IX
State Law Claim – Civil Conspiracy

Against Defendants Luke Tambrini, Star No. 109 and
Defendant Officer Kaufman, Star No. 101

**The Village offer no response to the allegation(s) contained in Count IX, as this Count is not directed against it. To whatever extent a response is required, the Village denies any and all substantive allegation(s) made against it.**

151.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:** **Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 151, as if fully restated herein.**

152.    Defendants Tambrini and Kaufman, acting in concert with other co-conspirators,

known and unknown, reached an agreement among themselves to deprive Plaintiff Marcus Mosley

of his constitutional rights.

**ANSWER:** **Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 152.**

153.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the unlawful use of force, arrest and initiation of false criminal charges against Plaintiff Marcus Mosley constituting false arrest, battery and malicious prosecution) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

**ANSWER:     Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 153.**

154.     In furtherance of their conspiracy each of these co-conspirators committed overt acts ad were otherwise willful participants in joint activity, including but not limited to: (a) knowingly and intentionally subjecting Marcus Mosley to objectively unreasonable force after falsely accusing him of illegally parking his car and urinating in public; (b) creating false incident reports and criminal complaints, omitting material information about how Defendant Tambrini, knowingly and intentionally fabricated the reasons for initiating contact with Marcus Mosley and created a false narrative to justify his objectively unreasonable us of force against Marcus Mosley; (c) knowingly and intentionally failing to pan the body-warn camera of Defendant Tambrini during the course of the encounter with Marcus Mosley to conceal how Defendant Tambrini was lying about the reasons for which he initiated his interactions with Marcus Mosley; (d) knowingly and intentionally falsified police reports and criminal complaint to create a false narrative that Marcus Mosley had engaged in criminal conduct for which probable cause existed to justify his arrest and subsequent criminal prosecutions; and (e) knowingly and intentionally falsified police reports and criminal complaint to create a false narrative that Marcus Mosley engaged in unlawful physical contact with Defendant Tambrini which would justify his use of force and/or falsely characterize the force used as reasonable to falsely justify Defendant Kaufman's failure to intervene and protect Marcus Mosley from Defendant Tambrini's objectively unreasonable use of force.

**ANSWER:** Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 154.

### COUNT X
State Law Claim – Willful & Wanton Conduct

Against Defendants Luke Tambrini, Start No. 109
and Defendant Officer Kaufman, Star No. 101

**The Village offer no response to the allegation(s) contained in Count X, as this Count is not directed against it. To whatever extent a response is required, the Village denies any and all substantive allegation(s) made against it.**

155. Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:** Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 155, as if fully restated herein.

156. In the manner described more fully above, the actions of Defendants breached the duty of care owed to Plaintiff Marcus Mosley.

**ANSWER:** Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 156.

157. The actions of Defendant were willful and wanton in that they demonstrated an utter indifference for the safety and well-being other. In addition, and/or alternatively, Defendants were conscious that an injury could result from the above-described course of action and recklessly disregarded the consequences of those actions

**ANSWER:** Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 157.

158. The misconduct was undertaken with intentional disregard for Plaintiff Marcus Mosley's rights.

**ANSWER:** Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 158.

159. As a result of Defendants misconduct, Plaintiff Marcus Mosley experienced and continues to experience pain, suffering and emotional distress.

**ANSWER:     Defendants Tambrini and Karlson deny the allegation(s) contained in paragraph 159.**

COUNT XI

State Law Claim – *Respondeat Superior*

Against Defendant Village of Lynwood

**Defendants Tambrini and Karlson offer no response to the allegation(s) contained in Count XI, as this Count is not directed against them.  To whatever extent a response is required, Defendants Tambrini and Karlson deny any and all substantive allegation(s) made against them.**

160.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:     Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 160, as if fully stated herein.**

161.     In committing the acts alleged in this Complaint, Defendant Luke Tambrini and Defendant Kaufman were employees of the Village of Lynwood, and agents of the Village of Lynwood Police Department, acting at all relevant times within the scope of their employment with Defendant Village of Lynwood.

**ANSWER:     The Village admits that Defendants Tambrini and Karlson were employed as police officers by the Village of Lynwood on May 17, 2019, and were working within the scope of their employment, but have denied, and continue to deny any and all misconduct and wrongdoing alleged against them in this lawsuit, and therefore deny the remaining allegation(s) in this paragraph.**

162.     Defendant Village of Lynwood is liable as principal for all torts committed by its employees and/or agents committed within the scope if their employment and/or agency with Defendant Village of Lynwood.

**ANSWER: The Village admits that the doctrine of *respondeat superior* can apply to both Illinois common law and Illinois statutory claims, denies that this paragraph completely and accurately sets forth the scope and limits of the doctrine, and therefore denies the remaining allegation(s) of this paragraph.**

163.     In the event that a jury finds that either Defendant Luke Tambrini and/or Defendant Kaufman committed any unlawful acts upon which this Complaint is premised, then Defendant Village of Lynwood is liable for the acts of that employee or agent.

**ANSWER: The Village admits that the doctrine of *respondeat superior* can apply to both Illinois common law and Illinois statutory claims, denies that the paragraph completely and accurately sets forth the scope and limits of the doctrine, denies that Officers Karlson and Tambrini engaged in any unlawful conduct, and therefore denies the remaining allegation(s) of this paragraph.**

COUNT XI
State Law Claim – Indemnification, 745 ILCS 10/9-102

Against Defendant Village of Lynwood

**Defendants Tambrini and Karlson offer no response to the allegation(s) contained in Count XII[3], as this Count is not directed against them. To whatever extent a response is required, Defendants Tambrini and Karlson deny any and all substantive allegation(s) made against them.**

164.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

**ANSWER:    Defendants incorporate their responses to each of the forgoing paragraphs as their answer to this paragraph 164, as if fully stated herein.**

165.    During the relevant times, the Village of Lynwood employed Defendants Tambrini and Karlson as police officers.

**ANSWER:    The Village admits the allegation(s) contained in paragraph 165.**

166.    The acts alleged herein were committed by Defendant Tambrini and Kaufman as an agent for an in the scope of their employment with the Village of Lynwood.

**ANSWER:    The Village admits that the Defendants Karlson and Tambrini were employed as police officers for the Village of Lynwood, and that they were acting within the scope of their employment, but deny any and all wrongdoing and misconduct alleged, and deny the remaining allegation(s) contained in paragraph 166.**

167.    Illinois law (745 ILCS § 10/9-102) provided that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

---

[3] Plaintiff's Amended Complaint refers to this Count and the preceding Count as "Count XI". The defense has referred to this Count as Count XII in its Answer.

**ANSWER:** The Village acknowledges the above Illinois Statute which speaks for itself, denies that the pleader completely and accurately sets forth the scope and limits of the provision, and therefore denies allegation(s) contained in paragraph 167.

WHEREFORE, Defendants, VILLAGE OF LYNWOOD, OFFICER LUKE TAMBRINI, and OFFICER KARLSON, respectfully pray that this Honorable Court enter an Order dismissing this cause so wrongfully brought, that judgment be entered in favor of Defendants VILLAGE OF LYNWOOD, OFFICER LUKE TAMBRINI, and OFFICER KARLSON, and against the Plaintiff, MARCUS MOSLEY, that they be awarded all fees and costs incurred in the defense of this suit, and for any other relief that this Court deems just.

## AFFIRMATIVE DEFENSES

1. On May 17, 2019, Officer Luke Tambrini and Officer Karlson were employed by the Village of Lynwood as police officers, and at all times to which the lawsuit relates, were engaged in performing governmental duties on behalf of the Village of Lynwood.

2. Officer Luke Tambrini and Officer Karlson were public employees, executing and enforcing the law while interacting with the Plaintiff, and at all times acted within the scope of their employment as Lynwood Police Officers.

3. A reasonable officer objectively viewing the facts and circumstances that confronted them would believe that the actions of Officer Tambrini and Karlson were lawful in light of the established law and the information that each possessed at that time, and Defendants Officer Luke Tambrini and Officer Karlson are therefore entitled to qualified immunity. Notwithstanding the above, the Defendant Officers are further entitled to qualified immunity for any reasonable mistakes and for any constitutional violations that were not clearly established at the time of Defendant Officers actions.

4.      In addition, Plaintiff's state law claims are barred by § 2-201 of the Illinois Tort Immunity Act, in that Defendants Tambrini and Karlson were public employees serving in a position involving the exercise of discretion.   *See* 745 ILCS 10/2-201. Thus, they are not liable for any injuries resulting from any act or omission that occurred within the exercise of that discretion.

5.      Defendant Officers are not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute "willful and wanton" conduct. *See* 745 ILCS 10/2-202.

6.      Under the Illinois Tort Immunity Act, a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

7.      Under the Illinois Tort Immunity Act, Defendant Officers are not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

8.      Plaintiff was cited with a municipal ordinance violation for disorderly conduct based on this incident, and after a hearing on the merits was found guilty of committing the act of urinating in public.  In addition, Plaintiff was cited for parking illegally based on this incident, and was found liable.  Accordingly, Defendants raise the defenses of Collateral Estoppel, Res Judicata, *Rooker-Feldman* Doctrine, and *Heck v. Humhprey* and *Heck's* progeny, as Plaintiff's purported claims are based in whole or part on issues that have already been decided, and may therefore constitute an impermissible collateral attack, implicate fundamental fairness and comity concerns; and may necessarily imply the invalidity of the prior adjudications.

8. In addition, in September of 2019, Plaintiff was indicted in Case No. 19CR00112 for violating federal law, and subsequently entered a deferred prosecution agreement with the United States. To whatever extent the criminal proceedings and agreements arising therefore relied on information inconsistent with the allegation(s) advanced in Plaintiff's operative pleading, Plaintiff is estopped or otherwise barred from advancing said allegations in the present lawsuit.

9. Probable cause existed to arrest and charge Plaintiff, which consequently defeats Plaintiff's claims.

10. Officers Tambrini and Karlson are absolutely immune from any testimony provided during trial or before the grand jury.

11. Plaintiff has failed to state a claim upon which relief may be had.

WHEREFORE, Defendants, the Village of Lynwood, Officer Luke Tambrini and Officer Karlson respectfully request judgment in their favor and against Plaintiff on their Complaint, request that Plaintiff take nothing by way of this Complaint, that they be awarded all fees and costs incurred in defending this claim so wrongfully brought, or for all such other relief the Court deems just.

## **JURY DEMAND**

Defendants hereby demand a trial by jury.

Respectfully submitted,

By:    <u>/s Michael J. A. Pasquinelli</u>
One the attorneys for the Defendants

Michael J. A. Pasquinelli,
Thomas J. Condon, Jr.
Peterson, Johnson & Murray Chicago, LLC
200 West Adams, Suite 2125
Chicago, IL 60606
mpasquinelli@pjmchicago.com
T: 312-724-8024
F: (312) 896-9318

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that the above Answer with Affirmative Defenses and Jury Demand was served upon the Parties via ECF/CM on October 13, 2021.


<u>/s Michael J. A. Pasquinelli</u>